Filed 4/18/13  P. v. Smith CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDRE DELOINE SMITH,<br><br>    Defendant and Appellant. | D061801<br><br><br><br>(Super. Ct. No. SCD219244) |

APPEAL from an order of the Superior Court of San Diego County, Desiree A. Bruce-Lyle, Judge.  Affirmed.

The issue in this case is whether the trial court abused its discretion, on remand from an earlier appeal, by denying defendant an evidentiary hearing on his motion for a new trial based on juror misconduct.  We find no abuse of discretion and accordingly, affirm the order.

BACKGROUND[1]

A jury convicted Andre Deloine Smith of carrying a concealed dirk or dagger. (Former Pen. Code, § 12020, subd. (a)(4).) The evidence showed that on the evening of February 28, 2009, a police officer was investigating a matter and Smith aggressively demanded the officer's badge number. Smith threw his hands up in the air and he had nothing in his hands. The officer ordered Smith to stay back at least twice, but Smith continued to walk toward the officer. After receiving a final warning to stay back, Smith responded with an obscenity, while placing his left hand at his side. The officer saw Smith "fumbling his hand around" near his waistband and almost immediately thereafter, the officer heard a "loud clank" on the ground. The officer saw a knife with a blade that was approximately three and a half inches long and Smith offered, " 'Yeah. You're right, Officer. I dropped the knife. You got me.' " Smith did not testify at trial.

After the jury was released, Smith filed a petition to unseal juror identifying information in an attempt to obtain juror affidavits to support a motion for new trial based on juror misconduct. (Code Civ. Proc., § 237, subd. (b).) The court denied the petition. The court suspended imposition of sentence for three years and placed Smith on summary probation.

Smith appealed, contending the trial court abused its discretion by denying his petition. This court agreed, finding good cause for the release of the juror identifying information. In support of the motion, Smith's counsel filed a declaration that stated

---

1    For convenience, we recite facts from the earlier appeal in this case. (*People v. Smith* (May 11, 2011, D056551) [nonpub. opn.].)

2

counsel for both sides had met with Juror No. 10 after trial, and Juror No. 10 revealed that the "entire jury panel" based its conviction on Smith's failure to testify. We concluded Juror No. 10's statement "clearly suggests the possibility that one or more jurors discussed Smith's failure to testify during deliberations," and thus the "statement . . . provides a basis for permitting Smith to investigate whether the jury in fact discussed the improper subject of Smith's failure to testify. . . . If the jury did in fact discuss Smith's failure to testify, evidence of such a discussion would be admissible to impeach the verdict, pursuant to Evidence Code section 1150." We conditionally vacated the judgment and ordered a limited remand. We directed the trial court to disclose juror identifying information to Smith's counsel and depending upon the results of counsel's investigation and upon his subsequent motions (if any), to take such further action as may be necessary.

On remand, the trial court released identifying information on jurors, including Juror No. 12.[2] After counsel's investigation, Smith filed a motion for a new trial based on jury misconduct. The motion was not supported by any sworn juror affidavit. Rather, Smith presented a statement by counsel's investigator, to the effect that he had interviewed Juror No. 12, and Juror No. 12 stated he did not have full recall of the deliberations, but he did recall that the jury had concerns that Smith did not testify, did not defend himself, and did not talk about what happened. Juror No. 12, however, denied that the jury based its decision on Smith's silence.

---

[2]    The parties agree Juror No. 12 is at issue in this appeal, not Juror No. 10.

The prosecution opposed the motion, arguing the investigator's statement was inadmissible hearsay, and a sworn juror affidavit is a prerequisite to an evidentiary hearing on the issue of juror misconduct. In reply, Smith presented a declaration by the investigator, which reiterated the information in his statement. The prosecution also objected to the declaration as inadmissible hearsay.

At a hearing, Smith's counsel represented she was unable to submit a sworn affidavit from Juror No. 12, because after talking with the investigator and being presented with a proposed affidavit, he refused to sign it. Counsel advised the court as follows: Juror No. 12 "asked if I could e-mail him the declaration before he signed it. I said that's fine. And he was concerned. His wife is a lawyer. And I guess he was concerned that he might be facing charges. I did make it clear he is not facing any charges. That's not what is going on. [¶] And I sent him a declaration that I had written up, essentially what the court has in front of [it] . . . . And [Juror No. 12] e-mailed me back. And he said—a long list, basically *backtracked on every statement that he made*. He said that he felt that his statements were taken out of context. He felt that modifications needed to be made. He asked me to delete certain portions and to send it to him again." (Italics added.)

Counsel added, "I deleted those portions. I sent it to [Juror No. 12] again. [¶] He responded that he didn't want to sign anything and that he would rather just come into court and testify in his own words. [¶] I did subpoena him to be here today. He was outside the door at 1:30 when I was here earlier. His wife was here. I believe that he is still out there, though I didn't check as I was trying to get back into this court as soon as

4

possible. [¶] So that is why I submitted a declaration on behalf of my investigator."

Counsel conceded that the modified declaration she sent to Juror No. 12 "really didn't say much at all, because . . . he had indicated he wasn't willing to sign much."

The court disallowed the investigator's declaration as inadmissible hearsay. The court found that a sworn juror affidavit was required to make a prima facie case for an evidentiary hearing and thus it denied Smith a hearing. It also denied his motion for a new trial. The court reinstated the original judgment.

## DISCUSSION

Smith does not dispute that the investigator's declaration was inadmissible hearsay. It is settled that " 'a jury verdict may not be impeached by hearsay affidavits.' " (*People v. Williams* (1988) 45 Cal.3d 1268, 1318-1319; *People v. Avila* (2006) 38 Cal.4th 491, 605.)

Rather, Smith contends that when, as here, a juror is available to give live testimony in lieu of a sworn affidavit, an affidavit is not a prerequisite of an evidentiary hearing. " 'We review for abuse of discretion the trial court's denial of defendant's postverdict request for an evidentiary hearing into allegations of jury misconduct.' " (*People v. Avila, supra,* 38 Cal.4th at p. 604.)

In *People v. Hedgecock* (1990) 51 Cal.3d 395 (*Hedgecock*), the California Supreme Court held "it is within the discretion of a trial court to conduct an evidentiary hearing to determine the truth or falsity of allegations of jury misconduct, and to permit the parties to call jurors to testify at such a hearing. This does not mean, however, that a trial court must hold an evidentiary hearing in every instance of alleged jury misconduct.

5

The hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred.  Even with such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing."  (*Id.* at p. 419, fn. omitted.)

In *Hedgecock,* the defendant's motion for a new trial was supported by sworn affidavits indicating juror misconduct.  The prosecution submitted counter-affidavits denying any juror misconduct.  The high court held that under that circumstance, the trial court abused its discretion by finding it was unauthorized to hold an evidentiary hearing. (*Hedgecock*, *supra*, 51 Cal.3d at pp. 411-415.)

Here, the trial court relied on *People v. Cox* (1991) 53 Cal.3d 618 (*Cox*).  In *Cox,* a juror declined to sign under penalty of perjury a declaration that ostensibly included statements she made to a defense investigator.  The high court "declin[ed] to extend the holding in *Hedgecock* to situations in which the defendant merely seeks to place unsworn statements under oath by calling upon reluctant jurors to reiterate those statements from the witness stand."  (*Cox*, at p. 698.)  *Cox* explains:  "First, we find no constitutional, statutory, or decisional imperative supporting such an extension.  A criminal defendant has neither a guaranty of posttrial access to jurors nor a right to question them about their guilt or penalty verdict.  . . .  [¶]  Second, requiring testimony under such circumstances is tantamount to the type of 'fishing expedition' condemned in *Hedgecock*.  Either a juror is willing to come forward and, at least on a preliminary basis, sign an affidavit or not.

6

Unless the reticence results from impermissible interference by the court or prosecutor, the reasons therefor should not be subject to further inquiry." (*Cox*, at pp. 698-699.)

*Cox* added, " 'To grant this kind of power to the losing attorney would open the door to harassment of jurors and . . . ultimately damage the jury process and the administration of justice.' [Citation.]  In the civil context, we have also recognized that 'permitting counsel for the losing party to interrogate unwilling trial jurors touches the integrity of our venerable jury process.  . . .  [O]nce aware that after sitting through a lengthy trial he himself may be placed on trial, only the most courageous prospective juror will not seek excuse from service.' [Citations.]  Although in *Hedgecock* we permitted a limited right to examination under specified circumstances, the justifiable concern for juror prerogatives cautions against an extension of that rule to the instant facts." (*Cox, supra,* 53 Cal.3d at p. 699.)  Additionally, the court noted, "jurors might well completely refuse to talk with defense counsel or investigators if they anticipated being called into court for subsequently declining to acknowledge their statements under oath." (*Ibid.*)

Likewise, we conclude under the facts here that the court's ruling was proper.  The presentation of competent *evidence* is a prerequisite of an evidentiary hearing on jury misconduct. (*Hedgecock*, *supra*, 51 Cal.3d at p. 419.)  Another ruling would subject jurors to being dragged into court for fishing expeditions.  Here, certainly, defense counsel's questioning of Juror No. 12 would have been a fishing expedition.  When presented with a proposed declaration, Juror No. 12 "backtracked" on his supposed statements to the investigator and claimed the investigator took his statements out of

7

context. Defense counsel modified the declaration, but Juror No. 12 was still unwilling to sign it. Counsel conceded the modified version had little information in it, which does not suggest a strong possibility of prejudicial jury misconduct. As *Hedgecock* cautions, live juror testimony is ordinarily warranted only to resolve a *conflict* in sworn affidavits, and no conflict existed here because there were no sworn affidavits. (*Ibid.*)

Further, Smith submits that Juror No. 12 showed up to *voluntarily* testify at an evidentiary hearing, but defense counsel *subpoenaed* him. Counsel advised the court Juror No. 12 refused to sign an affidavit because he feared implicating himself. The court could reasonably find he was a reluctant juror. Requiring Juror No. 12 to testify regarding an unsworn statement is the type of juror harassment *Cox* is designed to preclude. Under all the circumstances, we find no abuse of discretion.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

IRION, J.

8